### WILLIAMS v. PRIMARY SCHOOL DISTRICT #3, GREEN TOWNSHIP.

1. STATES—SOVEREIGN IMMUNITY—TORT LIABILITY.

    The State and its agencies are endowed with absolute sovereign immunity from tort liability except to the extent that such immunity has been abrogated legislatively.

2. MUNICIPAL CORPORATIONS—GOVERNMENTAL IMMUNITY—TORT LIABILITY.

    Subdivisions of governmental and municipal corporations are not shielded from tort liability by any governmental immunity.

3. TORTS—GOVERNMENTAL IMMUNITY—SOVEREIGN IMMUNITY.

    Governmental immunity, until changed by the legislature, is restricted to *sovereign immunity*, which doctrine shields only the State, its institutions and agencies from tort liability.

4. SCHOOLS AND SCHOOL DISTRICTS—AGENCY OF THE STATE—SOVEREIGN IMMUNITY.

    A school district is an agency of the State clothed with sovereign immunity from tort liability.

5. SAME—SUBJECT OF STATE CONCERN—NO PART OF LOCAL SELF-GOVERNMENT.

    Education, its regulation and control are no part of local self-government, but a subject of State concern, differently treated in separate articles of the Constitution (Const 1963, art 7; art 8).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 52 Am Jur, Torts § 100.
[4, 6, 7] 47 Am Jur, Schools § 57.
[5] 47 Am Jur, Schools §§ 6–8.
[8] 39 Am Jur, Parks, Squares, and Playgrounds § 35 *et seq.*
    State's immunity from tort liability as dependent on governmental or proprietary nature of function. 40 ALR2d 927.
[9, 13] 39 Am Jur, Nuisances § 104.
    39 Am Jur, Parks, Squares, and Playgrounds §§ 41, 42.
    Injunction against games on neighboring property. 62 ALR 782.
[10, 12] 39 Am Jur, Nuisances §§ 123–127.
[11] 39 Am Jur, Nuisances §§ 6, 7, 9.
[14] 5 Am Jur 2d, Appeal and Error § 1009.

6. SAME—MUNICIPAL CORPORATIONS—STATE AGENCIES.

Fact that school districts are characterized as *local units* or *municipal corporations* for *purposes of property tax imposition* is immaterial since school districts are *state agencies* for *purposes of tort liability* (CL 1948, § 211.201 *et seq.*).

7. SAME—TORT LIABILITY—SOVEREIGN IMMUNITY—STATUTES.

Order of trial court dismissing plaintiff's suit for wrongful death of child who died from a fall from playground equipment belonging to defendant school district *held,* proper, where the defendant school district, as a state agency, is endowed with absolute sovereign immunity from tort liability, and where recent statutory limitation on such liability was not effective until after commencement of this suit (PA 1964, No 170).

8. STATUTES—SOVEREIGN IMMUNITY—TORT LIABILITY—GOVERNMENTAL OR PROPRIETARY FUNCTION.

Suit for wrongful death of child injured by fall from playground toy in school yard would have been properly dismissed by trial judge even if statute, which had abrogated tort immunity of political subdivisions when engaged in a proprietary function, had been applicable to the suit, since the Supreme Court has held that school district maintenance of recreational activities is a *governmental* function (PA 1964, No 170).

9. NUISANCE—ATTRACTIVE NUISANCE—SCHOOL PLAYGROUND EQUIPMENT—TRESPASS.

Plaintiff's claim for wrongful death of child from fall from a school playground toy based upon the theory that the playground equipment "Giant Stride" was an attractive nuisance *held,* inapplicable, because of absence of trespass, the basic requirement of an attractive nuisance.

10. SAME—GOVERNMENTAL IMMUNITY—PUBLIC NUISANCE—NUISANCE PER SE.

Acts in the discharge of a governmental function which create a nuisance *per se* do not come within the governmental immunity from tort liability otherwise accorded, but mere want of care in maintenance presents a question of negligence only and not that of a public nuisance, which must rest on an inherent danger even under the best of care.

11. SAME—PRIVATE NUISANCE—DISTURBANCE OF RIGHTS IN LAND.

A private nuisance is a civil wrong, based on a disturbance of rights in land.

12. Same—Public or Common Nuisance.

A public or common nuisance is a species of catch-all criminal offenses, consisting of an interference with the rights of the community at large which may include anything from the obstruction of a highway to a public gaming-house or indecent exposure.

13. Same—Playground Equipment.

Playground equipment from which a 6-year-old child fell and was killed *held*, not a private nuisance, where it was not a civil wrong based on a disturbance of rights in land, nor a public nuisance, since it did not interfere with the rights of the community at large, nor was the maintenance of such equipment a criminal offense.

14. Costs—Public Question—Fall from Playground Equipment.

No costs are allowed on appeal in action against school district by administrator of estate of 6-year-old child who died as a result of injuries received in fall from school playground equipment, a public question being involved.

Appeal from Mecosta; Van Domelen (Harold), J. Submitted Division 3 February 9, 1966, at Grand Rapids. (Docket No. 1,288.) Decided June 14, 1966.

Complaint by Jack Williams, special administrator of the estate of Suzan Kay Williams, and others against Primary School District No. 3, Green township, Mecosta county, Michigan, also known as the Paris School District, a political subdivision of the State of Michigan, for the wrongful death of Suzan Kay Williams after a fall from defendant's playground equipment. Summary judgment for defendant. Plaintiffs appeal. Affirmed.

*Robert L. Miles,* for plaintiffs.

*Cholette, Perkins & Buchanan (Richard D. Ward,* of counsel), for defendant.

HOLBROOK, P. J.   Plaintiffs brought action for claim of wrongful death of their six-year-old daughter, a student at defendant school, occurring May 14, 1964, during a recess period while she was using a a so-called "Giant Stride", one of the playground pieces of equipment situated on defendant's premises.

Defendant made a motion for a summary judgment under GCR 1963, 117 claiming there was no genuine issue as to any material fact and that defendant was a primary school district and an agency of the State of Michigan and as such was clothed with immunity from liability for ordinary torts committed in its exercise of the governmental function of conducting recreational activities on its school playground.

The learned trial judge granted the motion for summary judgment and dismissed plaintiffs' complaint.   Plaintiffs have appealed.

Plaintiffs raise one question on this appeal:

"Is a primary school district immune from suit for wrongful death of a 6-year-old child fatally injured during a school recess while playing unsupervised on a piece of school playground equipment, specifically alleged to be patently dangerous and of especial peril to children in such age brackets?"

Plaintiffs in their answer to the motion for summary judgment asserted that by the decision of *Myers* v. *Genesee County Auditor* (1965), 375 Mich 1, the rule of governmental immunity as to all political subdivisions of government was abrogated as well as to municipal corporations irrespective of whether the involved political subdivision was functioning "governmentally" or "proprietarily".   It was plaintiffs' claim therein that defendant school district was a political subdivision in accord with the

definition contained in PA 1964 No 170,[1] CL 1948, § 691.1401 *et seq.* (Stat Ann 1965 Cum Supp § 3.996 [101] *et seq.*), and governed by *Myers, supra.*

The case of *Myers, supra,* is the last of a series of Supreme Court decisions dealing with governmental immunity. It clearly distinguishes sovereign immunity, which may be claimed only by the State government: *i.e.,* the State and its agencies. It holds that the State and its agencies are endowed with absolute sovereign immunity from tort liability except to the extent that such immunity has been abrogated legislatively. Further, the *Myers Case, supra,* establishes the rule that subdivisions of governmental and municipal corporations are not shielded from tort liability by any governmental immunity.

Subsequent to the *Myers Case, supra,* until changed by legislature, governmental immunity consequently is restricted to "sovereign immunity" which doctrine shields from tort liability only the State, its institutions and agencies.

The case of *Sayers* v. *School District No. 1, Fractional* (1962), 366 Mich 217, is authority for the proposition that a school district is an agency of the State and as such, is clothed with sovereign immunity.[2] This postulate is founded upon sound precedent. The cases of *Attorney General* v. *Board of Education of City of Detroit* (1908), 154 Mich 584; *Attorney General* v. *Thompson* (1912), 168 Mich 511; *In re School District No. 6, Paris and Wyo-*

---

1 Effective July 1, 1965.

2 It is immaterial that school districts are characterized as "local units" or "municipal corporations" for purposes of allocation under the property tax limitation act, PA 1933, No 62, as amended, CL 1948, § 211.201 *et seq.* (Stat Ann 1960 Rev § 7.61 *et seq.*). The case of *Bacon* v. *Kent-Ottawa Metropolitan Water Authority* (1958), 354 Mich 159, holds that school districts possess the authority of "municipal corporations" *for purposes of property tax imposition.* The *Sayers Case, supra,* identifies school districts as "State agencies" *for purposes of tort liability.*

*ming Twps., Kent County* (1938), 284 Mich 132,
and *School District of the City of Lansing* v. *State
Board of Education* (1962), 367 Mich 591, hold that
education, its regulation and control, are no part of
local self-government but a subject of State con-
cern, differently treated in separate articles of the
State Constitution.    It may be noted that article 7
of the Michigan Constitution of 1963 deals with local
government: *i.e.,* municipal corporations and polit-
ical subdivisions, while article 8 specifically deals
with education.

The case of *Myers* v. *Genesee County Auditor, su-
pra,* did not overrule the case of *Sayers* v. *School
District No. 1, Fractional, supra,* we have previously
ruled in the case of *Picard* v. *Greisinger* (1965), 2
Mich App 96.    The latter remains the law for pur-
poses of this decision.

PA 1964, No 170 was not in force at the time the
claimed tort occurred on May 14, 1964, nor at the
time this case was commenced on May 20, 1965[3].
The foregoing disposes of the case and mandates
affirmance of the trial court.

While not necessary to decision herein, we choose
to deal with plaintiffs' claims that there are involved
in this case the issues of "attractive nuisance", and

---

[3] While the *Sayers Case, supra,* characterizes school districts as
State agencies, PA 1964, No 170, defines them as "political sub-
divisions" for purposes of tort liability.    The act deals with bodily
injury and property damage resulting from defective highways, the
negligent operation of government-owned motor vehicles and dan-
gerous or defective conditions of public buildings.    As to tort lia-
bility arising from any other causes, the State's "sovereign immunity"
is affirmed, but "political subdivisions" and "municipal corporations"
may claim immunity only if engaged in the discharge of a "govern-
mental", as distinguished from "proprietary", function.    Had PA
1964, No 170 been law for purposes of the decision herein, this Court
would be faced with characterization of a school district's mainte-
nance of recreational activities as the pursuit either of a "govern-
mental" or "proprietary" function.    Since *Sayers, supra,* identifies
the maintenance of recreational activities as a "governmental" func-
tion, the school district could properly claim immunity from tort
liability.

nuisance. In their briefs addressed to this court, plaintiffs claim that such issues were advanced as a basis for their suit in the trial court, notwithstanding the fact that plaintiffs' counsel did not name them as such in his complaint, because they were contained therein by allegations of fact. The claimed facts are contained in paragraphs 3 and 4 of said complaint and appear in the footnote.[4] Plaintiffs further alleged that their daughter was thrown to the ground from a swinging position either by reason of the rotational speed or by being bumped by the child then and there holding on to the chain immediately behind her, and that the injuries suffered from this fall caused her unfortunate death.

Plaintiffs' claim based on an attractive nuisance is inapplicable to the facts of this case because trespass is the basic requirement of an attractive nuisance, and it is absent here, *Royston* v. *City of Charlotte* (1936), 278 Mich 255.

Plaintiffs claim that their action can be maintained upon the premise that defendant created and maintained a nuisance by having the piece of equipment known as the "Giant Stride" on its playground.

---

[4] "(3) The aforesaid 'Giant Stride' essentially consists of a tubular steel pole about four inches in diameter, with the lower end anchored in the ground, implaced in an upright position to a height of about 10 feet, with a 360° rotating swivel device at the top from which 8 chains depend going downward to a double handle having similarity in aspect to a two-rung ladder, giving hand-holds at two different heights from the ground; and this device is activated by one or more children grasping the handles of the chains, running in either a clockwise or counterclockwise pattern, and when sufficient momentum is attained lifting the feet off the ground, whereby a swinging-out, riding motion is derived until momentum is lost, when the user must either jump clear or resume running on the ground to revive the momentum.

"(4) This device, so constructed and activated as aforesaid, is patently and obviously inherently dangerous for use by younger children, and most especially as to its use by a child of the age of the deceased child of plaintiffs; and at the time of the injury resulting in death of said child it was being operated and used by said child and two other children of the ages of 6 and 7 respectively."

Further that the governmental immunity afforded school districts does not extend to the creating or maintaining of a nuisance.

Plaintiffs cite the case of *Royston* v. *City of Charlotte, supra,* wherein Mr. Justice WIEST stated on p 260:

"Acts in the discharge of governmental functions which create a nuisance *per se* do not come within the immunity otherwise accorded.   Want of care in maintenance, however, presents the question of negligence only, and not that of a public nuisance, which must rest on inherent danger even under the best of care."

To better understand whether the piece of playground equipment in our case comes within the designation of a nuisance we turn to Prosser on Torts (3d ed), Nuisance, § 87, pp 592–594 for enlightenment and find:

"There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance'.   It has meant all things to all men, and has been applied indiscriminately to everything from an alarming advertisement to a cockroach baked in a pie.   There is general agreement that it is incapable of any exact or comprehensive definition.   Few terms have afforded so excellent an illustration of the familiar tendency of the courts to seize upon a catchword as a substitute for any analysis of a problem; the defendant's interference with the plaintiff's interests is characterized as a 'nuisance', and there is nothing more to be said. With this reluctance of the opinions to assign any particular meaning to the word, or to get to the bottom of it, there has been a rather astonishing lack of any full consideration of 'nuisance' on the part of legal writers.   *   *   *   *A private nuisance is a civil wrong, based on a disturbance of rights in land.*

The remedy for it lies in the hands of the individual whose rights have been disturbed. *A public or common nuisance, on the other hand, is a species of catch-all criminal offense, consisting of an interference with the rights of the community at large, which may include anything from the obstruction of a highway to a public gaming-house or indecent exposure.* As in the case of other crimes, the normal remedy is in the hands of the State. The two have almost nothing in common, except that each causes inconvenience to someone, and it would have been fortunate if they had been called from the beginning by different names. Add to this the fact that a public nuisance may also be a private one, when it interferes with the enjoyment of land, and that even apart from this there are circumstances in which a private individual may have a tort action for the public offense itself, and it is not difficult to explain the existing confusion." (Emphasis supplied.)

Applying the definition of nuisance to the facts of our case we are constrained to conclude that the playground equipment in question does not constitute a private nuisance for it was not a civil wrong based on a disturbance of rights in land, or a public nuisance, for it did not interfere with the rights of the community at large, nor was the maintenance of such equipment a criminal offense. At most under plaintiffs' allegations, this piece of equipment would be dangerous if used by children of tender age without proper supervision. Plaintiffs did not plead facts to show that the "Giant Stride" equipment was a nuisance *per se.* If it became dangerous, it did so by reason of the manner in which or by whom it was used.

If it was a breach of duty upon defendant's part in failing to supervise or control the use of the playground equipment which caused plaintiffs' decedent's

injury and death, it would be a tort for which there can be no recovery because of sovereign immunity.[5]

The trial court properly granted a summary judgment in favor of defendant. Judgment of dismissal affirmed. No costs, a public question being involved.

BURNS and McGREGOR, JJ., concurred.

---

[5] By virtue of the *Sayers Case, supra,* school districts are State agencies and entitled to sovereign immunity. PA 1964, No 170, which is not effective for purposes of this decision prospectively grants to school districts an immunity from tort liability in the pursuance of "governmental", as distinguished from "proprietary", functions.